**STERNE, KESSLER, GOLDSTEIN & FOX PLLC**
1100 New York Avenue, NW, Suite 600
Washington, DC 20005
Phone: (202) 371-2600
John Christopher (J.C.) Rozendaal (*pro hac vice*)
David Cornwell (*pro hac vice*)
Byron Pickard (*pro hac vice*)
Richard D. Coller III (*pro hac vice*)
Adam C. LaRock (*pro hac vice*)
Joshua I. Miller (*pro hac vice*)
jcrozendaal@sternekessler.com
davidc@sternekessler.com
bpickard@sternekessler.com
rcoller@sternekessler.com
alarock@sternekessler.com
jmiller@sternekessler.com

**BEUS GILBERT PLLC**
Attorneys at Law
701 North 44TH Street
Phoenix, Arizona 85008-6504
Phone: (480) 429-3000
Thomas A. Gilson (022460)
K. Reed Willis (028060)
tgilson@beusgilbert.com
rwillis@beusgilbert.com

*Attorneys for Defendant and Counterclaimant
Taylor Made Golf Company, Inc.*

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Parsons Xtreme Golf, LLC, | Case No.: 2:17-cv-03125-JJT |
| Plaintiff/Counter-Defendant, | **TAYLOR MADE'S SUPPLEMENTAL OPENING CLAIM CONSTRUCTION BRIEF** |
| vs. | |
| Taylor Made Golf Company, Inc., | |
| Defendant/Counterclaimant. | |

**TABLE OF CONTENTS**

I. Background ................................................................................................................. 1

II. Legal Standard ............................................................................................................ 1

III. Argument .................................................................................................................... 1

    A. The "veil" terms ............................................................................................... 1

    B. The "tapered" terms ......................................................................................... 3

    C. The "side edge" terms ...................................................................................... 5

    D. The "first portion of the crown" terms ............................................................ 6

    E. The "entire length" term .................................................................................. 7

    F. The "glass" term .............................................................................................. 8

    G. The "upper opening" term ............................................................................... 9

IV. Conclusion ................................................................................................................ 10

# TABLE OF AUTHORITIES

*Bicon, Inc. v. Straumann Co.,*
    441 F.3d 945 (Fed. Cir. 2006) ................................................................................. 5, 6

*Kara Tech. Inc. v. Stamps.com Inc.,*
    582 F.3d 1341 (Fed. Cir. 2009) ..................................................................................... 3

*Markman v. Westview Instruments, Inc.,*
    52 F.3d 967 (Fed. Cir. 1995) ........................................................................................ 3

*Omega Eng'g, Inc. v. Raytek Corp.,*
    334 F.3d 1314 (Fed. Cir. 2003) .................................................................................... 9

Taylor Made submits this supplemental claim-construction brief to address the disputed claim terms in U.S. Patent Nos. 6,969,326 and 7,281,994 (together, the "veil patents"), which are asserted in Taylor Made's Counterclaims. *See* Dkt. 86 at 1; Dkt. 113.

## I. BACKGROUND

The two veil patents share a specification with the composite crown patents addressed in Taylor Made's opening claim-construction brief. The veil patents claim metalwood golf clubs with a composite crown and with an additional "veil" feature that covers the junction **60** between the crown **12** and the shoulder **42** of the club body. An example of such a "veil" can be seen in Figure 10C of the patents (inset). The veil **58** is, simply put, the component of the club (whether separately or integrally formed) that covers the junction **60**. As Taylor Made explained in its opening brief, the veil is important because the junction can crack or chip, *see, e.g.,* Ex. CC ("'326 patent"), 7:25-26—undesirable events that



FIG. 10C

may negatively affect the acoustic characteristics and the coefficient of restitution of the club. *Id.*, 2:42-55. The veil helps mitigate these issues and improves player confidence by maintaining the unblemished appearance on the outer surface of the club above the junction.

## II. LEGAL STANDARD

Taylor Made described the appropriate legal standard in its opening *Markman* brief. Dkt. 118 at 3-4.

## III. ARGUMENT

### A. The "veil" terms

| Term | Taylor Made's Construction | PXG's Construction |
|---|---|---|
| "a surface veil secured atop the junction" | "lightweight material covering the junction of the body and the composite crown that is secured to the top of the junction of the crown and the body" | "a separately formed piece of lightweight material that is attached to the golf club head to cover the junction between the crown and the body" |
| "a veil disposed between the side | "lightweight material covering the junction of the body and the | "a separately formed piece of lightweight material that is attached to |

1

| edge of the crown and the shoulder" | composite crown disposed on the side edge of the crown and the shoulder" | the golf club head and at least partially fills the space between the side edge of the crown and the shoulder" |

The parties agree that a "veil" is a lightweight material that covers or is on top of the junction between the crown and shoulder. *See, e.g.*, '326 patent, Fig. 1 (showing crown 12 placed to cover the upper opening). The dispute about the "veil" centers on PXG's attempt to narrow the claims to require that the veil be a "separately formed" component. PXG's proposed addition of this requirement is an apparent attempt to avoid infringement. The accused veil of PXG's clubs is likely made of material(s) that are applied as a coating or filler (such as an enamel or adhesive) rather than a ply of carbon fiber. PXG's construction thus appears designed to preserve a later argument that the accused "veil" in its clubs is not "separately formed" because the material forming it is applied and later hardens, dries, or cures once on the clubhead.

Taylor Made's proposed construction, which omits the requirement for a "separately formed" veil, comports with the claims and the written description. The independent claims place no requirement that the "veil" have a particular material make up or be formed in any particular way. And the dependent claims illustrate that the "veil" term is broad enough to cover any lightweight material, regardless of how it is formed. For example, claim 6 of the '994 patent requires that the "veil" be made of a "second material" (distinct from the "first material" in the crown) but imposes no limit on how that material may be formed or applied. Ex. GG ("'994 patent"), claim 6. The specification never describes the "veil" as "separately formed"; instead, it broadly describes the "veil" as a made of "a second lightweight material." '326 patent, 7:29-33. In fact, the inventors even used the language "separately formed" to describe some embodiments in the specification, but this language was never applied to the veil. *See, e.g.*, '326 patent, 4:15-19; 6:47-51. This suggests that the inventors could have added that requirement to the veil if they had intended to do so. They did not.

Taylor Made's construction also squares with the plain-and-ordinary meaning of "veil" as something that "covers or conceals." Ex. DD at 1584. Whether something is

"separately formed" has no bearing on its ability to "cover or conceal." For example, a layer of spackling may not be "separately formed" before it is used to cover a crack in a wall, but it nevertheless covers and conceals the crack. Like spackling on a wall, the veil in the veil patents need not be formed separately before being applied to the clubhead to cover or conceal the junction.

Furthermore, although Figure 9 of the patents depicts one exemplary embodiment in which the "veil" is depicted as a separate piece (called out as "**58**"), it would be legal error to limit the claims to that single embodiment, which is in effect what PXG asks the Court to do. *Kara Tech. Inc. v. Stamps.com Inc.*, 582 F.3d 1341, 1348 (Fed. Cir. 2009) ("The patentee is entitled to the full scope of his claims, and we will not limit him to his preferred embodiment or import a limitation from the specification into the claims."). That PXG has found extrinsic evidence showing examples of separately formed veils provides no legitimate basis for narrowing the scope of the claims in a manner inconsistent with the way the term is used in the intrinsic record. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 981 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996) ("Extrinsic evidence is to be used for the Court's understanding of the patent, not for the purpose of varying or contradicting the terms of the claims."). Accordingly the Court should reject PXG's invitation to limit a veil to a "separately formed" item.

### B.  The "tapered" terms

| Term | Taylor Made's Construction | PXG's Construction |
|---|---|---|
| "tapered" | "angled or sloped toward the junction" | Indefinite. Alternatively, "having an upwardly oriented, planar profile that best fits the entire edge of the crown (or entire length of the shoulder) such that the planar profile forms an obtuse angle with the top surface of the recessed support [ledge]" |
| "tapered profile" | "a profile that is angled or sloped toward the junction" | |

The "taper" terms appear in the claims to describe the general shape of the crown and body as they approach the junction. The claims of the veil patents themselves spell out what "tapered" means. For example, claims 2 and 8 of the '326 patent, which introduce the "tapered" limitation, separately specify that the crown and shoulder are "tapered," "*thereby*

3

*defining an angle...*" or "*thereby forming a depression*," respectively. That is, the first portion of the crown and the shoulder are curved or sloped toward the junction to form a depression or obtuse angle. The specification is consistent. *See e.g.*, '326 patent, 7:39-42 ("both the side edge 62 of the crown 12 and the shoulder 42 are tapered, *defining an angle*…").



FIG. 10A

By proposing that the limitation requires "planar profiles," PXG may be attempting to limit the claims to the single embodiment of Figure 10A. Although not appearing in the veil patents, "planar" is generally used to describe a *flat*, two-dimensional surface. Golf club crowns are "non-planar" due to the curvature of the head shape in a heel-to-toe or front-to-back direction. Thus, it makes no sense to speak of a single "planar profile" on a golf club that "best fits the entire edge of the crown (or entire length of the shoulder)." PXG's proposed construction is therefore not only technically inaccurate but also more confusing than helpful to the jury. Nor is there any reason to suppose that the tapered surfaces on either side of junction 60 are always planar rather than curved; indeed, even Figure 10A does not disclose a planar surface because the junction itself is generally non-linear, as shown by the shape of the crown and shoulder in Figure 6, and thus does not allow for a planar surface.



FIG. 6

The specification also explains that the purpose of the taper is to create a depression at and around the junction. '336 patent, 7:35-40. But there is no description or claim language that states this depression must be formed by the junction of two planar surfaces. In fact, the word "planar" never appears in the specification. It is also difficult, if not impossible, to imagine how one could select a single planar profile that best fits the entire edge of the crown and the shoulder when one considers the constantly changing topography of those two edges as they encircle the upper opening of the club.

4

PXG's construction is also incorrect because it is does not square with the claims. PXG adds the "obtuse angle" language into its construction. But that language cannot be correct for two reasons. First, it renders other claim language superfluous. *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950-51 (Fed. Cir. 2006) (construction of one term cannot render other terms superfluous). For example, claim 2 of the '326 patent explicitly recites that an angle between 90 and 180 degrees is formed, so PXG's insistence on including an "obtuse angle" in the construction is entirely redundant. Second, and more fundamentally, the need for an obtuse angle does not make sense in the claims that do not require any type of angle, such as claim 8 of the '326 patent, which only requires a "depression." PXG's inclusion of the angle limitation as part of the construction of the "tapered" terms appears to be an attempt to bolster the requirement that the tapered sides be "planar" (because flat surfaces would form an angle). As noted above, this is error because, while some claims require an angle, others do not.

PXG's convoluted construction also presents the problem of determining the meaning of "best fits the entire edge"—a limitation not supported by the intrinsic record. PXG's construction does not provide any guidance how one would determine whether a plane "best fits the entire edge." The ambiguity and vagueness around that additional phrasing that PXG has concocted is more likely to muddle than to clarify the scope of the claim for the jury.

### C.     The "side edge" terms

| Term | Taylor Made's Construction | PXG's Construction |
|---|---|---|
| "the side edge of the first portion of the crown and the shoulder of the body are tapered, thereby defining an angle greater than about 90 degrees and less than about 180 degrees" | "the edges of the first portion of the crown and shoulder are angled or sloped so as form an angle between about 90 degrees and 180 degrees, such as depicted in figure 10A" | Indefinite. Alternatively, "the upwardly facing angle that is formed at the intersection of planes containing the tapered profiles [as defined below] of the edge of the crown and the shoulder, where that angle is greater than |
| "the side edge of the first portion and the shoulder of the body portion define an angle greater than about 90 degrees and less than about 180 degrees" | | |

5

BGD-#225943-v1-DEF_Supplemental_Markman_Brief

| "the side edge of the crown and the shoulder define an angle greater than about 90 degrees and less than about 180 degrees" | <br>FIG. 10A | about 90 degrees and less than about 180 degrees" |

As explained above, the taper and veil are intended to work together to allow for a smooth surface at the junction. The "side edge" terms simply provide the physical context for the taper and location of the veil. Here, the dispute again appears to revolve around the taper term, which PXG has incorporated into its construction here. For the same reasons as explained above in Section III.B, PXG's construction of these terms cannot be correct because its construction of "taper" renders the claims' explicit description of the angle superfluous. *Bicon,* 441 F.3d at 950-51.

### D. The "first portion of the crown" terms[1]

| Term | Taylor Made's Construction | PXG's Construction |
|---|---|---|
| "first portion of the crown"<br>"first portion sized to sit on the recessed support" | "a peripheral part of the crown that sits on the recessed support and is proximate to the shoulder of the body" | "portion of the crown that overlaps the recessed support member" |
| "an upper surface of the first portion of the crown" | The parties' dispute on this term revolves around the meaning of the "first portion" term. The parties agree that this term should be given its plain and ordinary meaning based on the Court's construction of the "first portion" terms. | |

Claim 1 of the '326 patent states that the "first portion" is "sized to sit on the recessed support of the body" and also that it is "proximate to the shoulder of the body." '326 patent, claim 1. These two requirements effectively define what the "first portion" is. And Taylor Made's construction captures both of these features.

Indeed, both sides agree that the first portion of the crown sits on the recessed support. But PXG's construction incorrectly uses the width of the recessed support to define

---

[1] The meaning of PXG's newly added "upper surface" term is plain on its face depending upon the Court's construction of the "first portion" terms.

6

the first portion of the crown; that is, in PXG's view, whatever part of the crown is above the recessed support is the first portion of the crown. But there is no support in the intrinsic record for tying the definition of the first portion of the crown to the width of the recessed support.



FIG. 10A

Moreover, under PXG's proposed construction, a very wide recessed ledge would mean that the first portion of the crown would include a great deal of the crown, including portions that are not proximate to the shoulder or body, as the claims require. The court should reject PXG's effort to tie the definition of the first portion of the crown to the width of the recessed support because there is no support in the intrinsic record to require that the size of the veil above the first portion of the crown be tied to the size of



FIG. 10C

the recessed support ledge. Some of the claims require that the upper surface of the first portion of the crown be covered by the veil. *See, e.g.*, '326 patent, claim 6. When discussing the size and positioning of the veil, the specification states that the clubhead "may further include a surface veil 58 *sized to cover the junction* between the crown 12 and the body 14" and further states that "the surface veil 58 can be *configured to be disposed about the crown 12 to cover the junction* between the crown and the body 14." '326 patent 7:17-18, 23-25. But nothing in the patent requires that the veil (and thus the first portion of the crown, which it must cover) must extend as far across the top of the crown as the recessed support extends below the crown, which is what PXG's proposed construction would require.

E.     The "entire length" term

| Term | Taylor Made's Construction | PXG's Construction |
|---|---|---|
| "the entire length of the junction between the first portion of the crown and the body" | No construction necessary; alternatively "all of the junction between the first portion of the crown and the body" | "entire length of the section overlapping the first portion of the crown and the portion of the shoulder proximate the edge of the first portion" |

7

This term describes the position of the veil: "the surface veil covers the entire length of the junction between the first portion of the crown and the body." '326 patent, claim 5. This term needs no construction, as its meaning is clear from the claim itself: the veil must cover the full "length of the junction," i.e., it must cover the junction between the crown and the body all the way around the edge of the crown.

Substituting PXG's confusing set of words for the straightforward text of the claim would only serve to confuse the trier of fact: "the surface veil covers the [entire length of the section overlapping the first portion of the crown and the portion of the shoulder proximate the edge of the first portion]." What is this overlapping section? PXG's proposed construction appears to be just one more component of its strategy to obtain claim constructions that would define the veil as covering the entire upper surface of the first portion of the crown, which PXG has elsewhere defined by the width of the recessed ledge on which the crown is sitting, thus again making the veil as wide as the recessed ledge—a requirement that is not found anywhere in the patent or prosecution history. Furthermore, as noted above, some claims require that the upper surface of the first portion of the crown be covered by a veil, but most claims have no such limitation. Because there is no support in the intrinsic record for PXG's proposed construction, the Court should reject it.

### F.    The "glass" term

| Term | Taylor Made's Construction | PXG's Construction |
|---|---|---|
| "glass" | "hard, brittle, homogenous, non-crystalline solid" | "an amorphous, non-crystalline, silicate-based solid" |

The parties agree that "glass" is a non-crystalline[2] solid. The dispute here centers on PXG's proposed requirement that glass be "silicate-based," i.e., sand-based, when no such requirement exists in the art or the intrinsic record. While many, indeed most, glasses are silicate-based, many are not. Nothing in the patent limits glass to silicate-based products.

---

[2] "Non-crystalline" and "amorphous" are synonymous, so PXG's description of glass as both "non-crystalline" and "amorphous" is redundant.

8

The plain-and-ordinary meaning of the term "glass" is "an inorganic product of fusion that has cooled to a rigid condition without crystallizing." Ex. EE at 255. This definition encompasses far more than silicate-based solids, because "glass" is defined not by its composition, but by its physical characteristics. Even the references on which PXG has relied in this case recognize that glass is "typically" silicate-based, implicitly acknowledging that it need not always be silicate-based. Ex. FF at PXG00013735.

G. **The "upper opening" term**

| Term | Taylor Made's Construction | PXG's Construction |
|---|---|---|
| "upper opening" | "an opening wholly within the top portion of the club" | Indefinite. Alternatively, "opening at least partially within an upper portion of the body" |

The parties have effectively briefed this term as part of the "top portion defining an upper opening" and associated "crown" terms in the previously briefed composite crown patents. *See* Dkt. 118 at 24-25; Dkt. 119 at 21-24. As Taylor Made explained in its opening brief, the "upper opening" term means "an opening wholly within the top portion of the club." The specification, including all the drawings, consistently (and exclusively) shows both the "upper opening" and the "crown" that seals the opening are entirely within the "top portion." Dkt. 118 at 24-25. These terms are identical through the claims, so consistency requires construing "upper opening" in the veil patents in the same way as in the closely related composite crown patents, as entirely within the "top portion" of the club. *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1334 (Fed. Cir. 2003) ("[W]e presume, unless otherwise compelled, that the same claim term in the same patent or related patents carries the same construed meaning.").

The text of the claims from the veil patents further shows that Taylor Made's proposed construction is correct. Independent claims 1 and 9 of the '994 patent recite "a top portion having an upper opening **formed therein**," thus eliminating any doubt that that the "upper opening" is formed solely within the top portion. The claims also require that the shoulder of the club, which sits above the back and sides of the club, is adjacent to the "upper opening": "a shoulder disposed around a periphery of the upper opening." This description likewise requires that the opening be entirely in the top portion of the clubhead.

9

Accordingly, the Court should reject PXG's attempt to broaden the claims to include openings in the side or back or other surfaces of the clubhead.

## IV. CONCLUSION

The Court should adopt Taylor Made's proposed constructions of the disputed claim terms.

DATED this 8th day of June, 2018.

**BEUS GILBERT PLLC**

By  */s/ K. Reed Willis*
 Thomas A. Gilson
 K. Reed Willis
 701 North 44th Street
 Phoenix, AZ 85008-6504

 John Christopher (J.C.) Rozendaal (*pro hac vice*)
 David Cornwell (*pro hac vice*)
 Byron Pickard (*pro hac vice*)
 Richard D. Coller III (*pro hac vice*)
 Adam LaRock (*pro hac vice*)
 Joshua I. Miller (*pro hac vice*)
 STERNE, KESSLER, GOLDSTEIN & FOX PLLC
 1100 New York Avenue NW, Suite 600
 Washington, DC 20005

 *Attorneys for Defendant and Counterclaimant TaylorMade Golf, Inc.*

# CERTIFICATE OF SERVICE

I hereby certify that on June 8, 2018, I electronically transmitted the foregoing document to the Clerk's Office using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

> Brian W. LaCorte
> Jonathon A. Talcott
> Jessica A. Wilson
> Leah Feinman
> Ballard Spahr LLP
>
> *Attorneys for Plaintiff/Counter-Defendant*

                                                                       /s/ K. Reed Willis